IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WELLS HANN, ELDA COCO,
PERSONAL REPRESENTATIVE
OF THE ESTATE OF JAMES COCO,
deceased, EDWARD HANN, BILLY
MYERS, FLOYD KING and DOUG
RADIGAN,

          Plaintiffs

    vs.

CRAWFORD & COMPANY, a corporation,

        Defendants

CIVIL DIVISION

NO.: 00-1908

Chief Judge Donetta Ambrose
Chief Magistrate Judge Francis X.
Caiazza

PLAINTIFFS' POST-TRIAL BRIEF

Attorneys of Record for the
Plaintiffs:
Joseph E. Fieschko, Jr., Esquire
Fieschko and Associates
2230 Koppers Building
Pittsburgh, PA  15219
412-281-2204
PA I.D.#28797

John R. Linkosky, Esquire
715 Washington Avenue
Carnegie, PA  15106
412-278-1280
PA I.D.#66011

Tybe A. Brett, Esquire
4710 US Steel Plaza
Pittsburgh, PA  15219
412-288-4387
PA I.D.#30064

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WELLS HANN, et al,

                Plaintiffs

vs.

CRAWFORD & COMPANY,

                Defendant

CIVIL ACTION
NO:    00-1908

Chief Judge Donetta Ambrose
Chief Magistrate Judge Francis X. Caiazza

## PLAINTIFFS' POST-TRIAL BRIEF

**I.**    **Crawford Failed To Meet Its Burden Of Showing Plaintiffs Were Exempt From the Requirements of the FLSA**

Crawford claims Plaintiffs to be exempt from the requirements of the FLSA pursuant to 29 U.S.C. § 213(a)(1) as defined in 29 CFR § 541 et seq. The application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. Corning Glass Works v. Brennan, 417 U.S. 188, 196, 197 (1974); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Claimed exemptions from the provisions of the FLSA are to be narrowly construed. Arnold, 361 U.S. at 392. If the record is unclear as to any exemption requirement, the employer will be held not to have satisfied its burden. Idaho Sheet Metal Works, Inc., v. Wirtz, 383 U.S. 190, 206 (1966). See also Friedrich v.U.S. Computer Service, 974 F.2d 409 (3d Cir. 1992) (citing Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991)). The employer "must overcome the presumption that the...exemption does not apply to its employees." Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991), cert. denied, 506 U.S. 905 (1992).

In order to qualify for exemption under 29 U.S.C. § 213(a)(1), an employer must meet all the tests outlined in 29 CFR § 541, et seq. Walling v. General Industries, Co., 330 U.S. 545, 547,

548 (1947); <u>Rau v. Darling's Drug Store, Inc.</u>, 338 F.Supp. 877, 881 (W.D. Pa. 1975). Crawford has claimed these employees to be exempt under both the administrative and executive exemptions. In order to qualify under these exemptions, employers must prove that the employee meets the duties basis test <u>and</u> the salary basis test. 29 C.F.R. §§ 541.2 (a) to (d) <u>and</u> (e), 541.1 (a) to (e) <u>and</u> (f). <u>See also</u> <u>Brock v. Claridge Hotel and Casino</u>, 664 F. Supp. 899 (D.N.J. 1986), <u>remanded</u>, 864 F. 2d 180 (3d Cir. 1987), <u>cert</u>. <u>denied</u>, 488 U.S. 925 (1988) and <u>Auer v. Robbins</u>, 519 U.S. 452 (1997). Crawford cannot meet the salary basis test for any of the six Plaintiffs because they were all paid on an hourly basis.

To satisfy the salary basis test, the employer must show that the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount consisting of all or part of his compensation, which amount is not subject to reduction because of variations in the quantity or quality of the work performed. An employee must receive his full salary for any week in which work is performed without regard to the number of days or hours worked, but need not be paid his salary for any week in which no work is performed 29 CFR §§ 541.1(e), 541.2, 541.118(a). Crawford's argument that Plaintiffs were paid on a salary basis fails for three reasons.

First, on all three projects in question, Plaintiffs' pay was directly related to the quantity of their work, that is they were paid an hourly wage based upon the number of hours they worked in a workweek. On the Buckeye and Ashland projects, Crawford made no argument that Plaintiffs were paid on a salary basis. On the Exxon Valdez project, Crawford argued Plaintiffs' $800 vacation pay constituted a "salary." There is no basis for this argument. In <u>Brock</u> the employees signed employment contracts calling for a minimum salary of $250 per week, but

2

were paid additional compensation at an hourly rate. The Third Circuit disallowed the exemption, ruling that the alleged "salary" must bear a reasonable relationship to the actual weekly wages paid, finding, "That a minimum payment unrelated to an employee's income is that employee's "salary" stretches the common understanding of the term out of proportion." 846 F. 2d at 185. Citing the District Court's opinion, the Court further noted,

> Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transform the compensation scheme into a salary based plan. Brock, 846 F 2d at 183.

Second, Crawford presented evidence that Plaintiffs' wages were subject to a 5% "holdback" which was to be paid after Plaintiff's work was determined to be satisfactory. An employer who maintains the discretion to reduce an employee's compensation as the result of the employee's hours of work or the quality of the employer's work, may not consider the employee to be paid on a salaried basis. Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991), cert. denied, 506 U.S. 905 (1992); Carpenter v. The City and County of Denver, 82F.3d 353, 359 (10th Cir. 1996); Bankston v. State of Illinois, 68 F.3d 1249, 1253 (7th Cir. 1995); Kennedy v. District of Columbia, 994 F.2d 6, 11 (D.C. Cir. 1993). Also, an employee is not exempt pursuant to § 213(a)(1) of the FLSA if he is covered by a policy that permits disciplinary or other deductions in pay as a practical matter. That standard is met if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood of such deductions." Auer v. Robbins, 519 U.S. 452 (1997). Thus, Crawford's "holdback" policy defeats the exemption.

Third, in Brock, the $250 was truly a predetermined amount written into the employment

contract. Crawford presented no evidence that the $800 constituted a pre-determined amount. Rather, all evidence adduced at trial suggested that this amount was a fringe benefit rewarding employees who worked on the project for an extended period of time, and was not a term of the contract agreement. Moreover, 29 C.F.R. §541.118 requires that the predetermined amount be paid for all weeks in which work was performed. By definition, the $800 in vacation pay was paid for a week in which <u>no</u> work was performed, and therefore the vacation pay could not be a "salary."

## II. Crawford Has Made No Showing That It Acted In Good Faith And Had Reasonable Grounds For Its Conduct in Failing To Pay Plaintiffs Overtime Wages, Thus Entitling Plaintiffs To Liquidated Damages

An employer who violates the FLSA "shall be liable to the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An award of liquidated damages is mandatory unless the employer carries its burden, which is a difficult one to meet, of demonstrating good faith and reasonable grounds for its conduct. <u>Martin v. Selker Bros., Inc.</u>, 949 F.2d 1286, 1299 (3d Cir. 1991); <u>Marshall v. Brunner</u>, 668 F.2d 748, 753 (3d Cir. 1988); <u>Brock v. Willamowsky</u>, 833 F.2d 11, 19 (2d Cir. 1987). Liquidated damages are compensatory rather than punitive in nature, in that they compensate the employee for losses he may have suffered by reason of not receiving proper wages when they were due. <u>Overnight Motor Transp. v. Missel</u>, 316 U.S. 572, 583 (1942); <u>Selker Bros.</u>, 949 F.2d at 1298.

To carry its burden, the employer must show that it took affirmative steps to ascertain the actual requirements of the FLSA, but nonetheless violated its provisions. The employee need not establish an intentional violation of the FLSA to recover liquidated damages. <u>Martin v. Cooper</u>

Electric Supply Co., 940 F.2d 896 (3d Cir. 1991) (citing Tri-County Growers, Inc., 141 F.2d at

129. To satisfy the good faith requirement, the employer must show an honest intention to

ascertain and follow the dictates of the FLSA. Laffey v. Northwest Airlines, Inc., 567 F.2d 429,

465 (D.C. Cir. 1976), cert denied, 434 U.S. 1086 (1978). The reasonable grounds test is an

objective one, and is not satisfied by ignorance. Brunner, 668 F.2d at 753. If the employer fails

to come forward with substantial evidence to satisfy the good faith and reasonable grounds

requirements, the Court is without discretion to deny liquidated damages. Selker Bros., 949 F.2d

at 1296; Willians v. Tri-County Growers, Inc., 141 F.2d 121, 129 (3d. Cir. 1984); Claridge Hotel

& Casino, 846 F.2d at 187; Walton v. United Consumer's Club, Inc., 786 F.2d 303, 310 (7th Cir.

1986).

     Crawford made no showing that it acted in good faith and had reasonable grounds for its

conduct. To the contrary, the evidence showed Crawford's disinterest in learning of their

obligations under the FLSA. When given the opportunity to learn of its obligations through the

DOL investigation in 1991, Crawford interfered with and attempted to control the facts presented

in the investigation to the investigators. However, Crawford could not control what their own

payroll records showed, that the adjusters and monitors who worked on the Exxon Valdez project

were paid on an hourly basis, and could not be exempt under 29 U.S.C. §213(a)(1).

     The DOL conducted an investigation of Crawford with respect to payment of overtime

wages from July 1989 to July 1991. The report was signed by the investigators on July 19, 1991

and reviewed and approved by their superiors on August 30, 1991. (Finding of Fact 3).[1] The

---

[1] Plaintiffs' claims for overtime wages extend from April 9, 1989, when Billy Myers and Jimmy Coco began work on the Exxon Valdez project, through January 18, 1992, when Billy Myers last worked on the Buckeye Oil project.

DOL investigation involved the exempt status of sixty-four positions Crawford claimed to be exempt from the overtime provisions of the Fair Labor Standards Act. The DOL investigators concluded that the exemption was properly claimed for seven of the positions, took no position on eleven of the positions and found Crawford to have improperly claimed an exemption for forty-six of the positions. (Finding of Fact 4). Included in the positions for which Crawford had improperly claimed an exemption were "adjusters" and "CORE Adjusters" who worked as monitors on the Exxon Valdez project and were paid an hourly wage of $26.63 per hour. (Finding of Fact 5). Crawford was uncooperative and interfered in the investigation, by instructing its employees who were interviewed by the DOL on what to say to the investigators. Crawford's corporate attorney advised all employees not to sign statements taken by investigators. (Finding of Fact 7).

A final conference on all positions reviewed was held on June 24, 1991. The conference was attended by DOL investigators and Crawford's representatives. The end result of the meeting was that Crawford's representatives refused to come into the investigator's instructions regarding compliance with the FLSA, including keeping records of the employees determined to be nonexempt and paying overtime wages for hours worked in excess of forty per week. (Finding of Fact 6). Crawford subsequently ignored the directive received from the DOL's Deputy Regional Solicitor to come into compliance regarding the payment of overtime wages to its adjusters (Plaintiffs' Exhibit 53, at 45), another opportunity to ascertain its obligations under the FLSA.

### III. The Statute Of Limitations Does Not Bar Plaintiffs' Actions For Overtime Compensation Under The FLSA.

6

The relevant statute of limitations is set forth at 29 U.S.C. § 255(a), which provides that an action for unpaid overtime compensation under the FLSA must be "commenced within two years after the cause of action accrued . . ., except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." However, "the equitable tolling doctrine 'is read into every federal statute of limitations.'" Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946).

Under the FLSA, the employer has a duty to post a notice informing its employees of their rights under the minimum wage and overtime provisions of the statute 29 C.F.R. § 516.4. A significant body of case law holds that if an employer fails to comply with 29 C.F.R. §516.4, its employees' claims for damages under the overtime provisions of the FLSA are tolled until the employee seeks an attorney and becomes aware of his legal right to pursue a claim for overtime wages. There is a two-part test concerning cases in which an employer fails to post appropriate FLSA notices or ADEA notices; once the employee presents evidence that the employer failed to comply with 29 C.F.R. § 516.4, the burden shifts to the employer to show that the employee had actual knowledge of his right to overtime or sought an attorney at some time outside of the applicable statute of limitations. Bonham v. Dresser Industries Inc., 569 F.2d 187, 193 (3rd Cir. 1977), cert. denied, 439 U.S. 821 (1978), Kamens v. Summit Stainless Inc., 586 F. Supp. 324 (E.D.Pa. 1984), Nogar v. Henry F. Teichmann, Inc., 640 F.Supp. 365, 370 (W.D.Pa.1985), Callowhill v. Allen-Sherman-Hoff Company, Inc., 832 F.2d 269 (3rd Cir. 1987), and Sonnier v. Crawford & Company, CA: 94-1755 (W.D.Pa.), aff'd, No. 97 3096, 1997 U.S. App. LEXIS 33444 (3d Cir. 1997), cert. denied, 523 U.S. 1107 (1998).

At all relevant times Crawford was aware of the posting requirement of 29 C.F.R. §

516.4.  By May 10, 1990, Crawford knew of its obligation to post FLSA notices and had a policy to post the notices in its branch offices (Finding of Fact 107).  Despite its knowledge of its legal obligation, Crawford did not post FLSA notices in its temporary facilities opened for catastrophe operations  (Finding of Fact 108).  Indeed, Crawford has stipulated, consistent with the evidence in this case, that it did not post notices on the Exxon Valdez project, and Crawford did not post FLSA notices on the Buckeye project.  (Finding of Fact 109).

Evidence of employer's misleading conduct beyond the regular statute of limitations period is also relevant in the application of the doctrine of equitable tolling in FLSA cases. Equitable tolling is appropriate "'where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights.'"  Henchy v. City of Absecon, 148 F.Supp.2d 435, 438-39 (D.N.J. 2001)(quoting Meyer v. Rygiel Prod. Corp., 720 F. 2d 303, 309 (3d Cir. 1983).  Crawford's subsequent actions confirm that it continued to knowingly violate the law, and, rather than simply obey the law and pay their hourly adjusters overtime wages, it attempted to circumvent the law and mislead its adjusters in order to avoid paying overtime wages.  For example, at a meeting of Crawford CORE adjusters in 1993 in Atlanta, in response to a question about entitlement to overtime pay, Bud Trice said that adjusters were not entitled to overtime pay.  Beverly Rogers, who worked for Crawford coordinating adjusters, said that Crawford had done some research, and although Gene Renfro asked to see the research, it was never provided.  (Finding of Fact 11). This meeting occurred after Crawford had been told by the DOL investigators that their adjusters were not exempt and shortly before the DOL Deputy Solicitor again informed Crawford of its legal obligation to pay their adjuster overtime wages.

Instead of responding to their employees truthfully or at least coming into compliance by

paying their adjusters overtime wages, in September of 1993 Crawford instituted a policy

providing for a $250.00 minimum "salary" per week for projects in which it paid their adjusters

on an hourly basis.   (Finding of Fact 9).[2]   Since $250.00 is the minimum "salary" amount

required under 29 C.F.R. § 541.118, it is obvious that Crawford knew that its policy of not

paying overtime wages to adjusters on hourly projects had been a violation of federal law, and

instituted a cheap way to circumvent the statute.

### A   Crawford Failed To Meet Its Burden Of Showing That It Posted An FLSA Notice As Required By 29 C.F.R. § 516.4 At The Worksites Where Plaintiffs Worked For Crawford.

Under the FLSA, the employer has a duty to post a notice informing its employees of

their rights under the minimum wage and overtime provisions of the statute:

> Posting of notices.
>
> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

29 C.F.R. § 516.4 (emphasis added).

The Third Circuit has prescribed the method by which Crawford must prove compliance

with §516.4 on the Exxon Valdez project:

> We recognize that an employer may be in a difficult position with respect to establishing that it posted a notice.  After all, unobservant employees with no particular reason to ascertain whether a notice is posted might not see a notice that is there.  Yet an employer by an exacting audit process in which precise records set forth that a notice is posted should be able to establish so conclusively that a notice has been posted that evidence of employees that they did  not see the notice would not be sufficient to establish that it was not there.

Sonnier v. Crawford & Co., CA No. 94-1755 (W.D. Pa. 1997), aff'd., No. 97-3096, pages 2-3,

---

[2] This was the practice specifically rejected by the Third Circuit in Brock as not effecting compliance with the salary

9

1997 U.S. App. LEXIS 33444 (3d Cir. 1997), cert. denied, 523 U.S. 1107 (1998) (attached hereto as Exhibit 1), see also Memorandum Order in Moss v. Crawford & Co., C.A. No. 98-1350 (W.D. Pa.), dated June 13, 2003, Finding of Fact 25 (attached hereto as Exhibit 2).

At all times and locations in question in this case, Crawford had two corporate policies that prevented them from complying with §516.4, in light of the Third Circuit's opinion. First, Crawford did not have an exacting audit procedure in which precise records set forth that the FLSA notice was posted in each office where Crawford employees worked. (Finding of Fact 111). Second, Crawford's corporate policy concerning placement of FLSA notices on employee bulletin boards only required the placement of the notices in permanent offices and explicitly excluded the placement of the notices on bulletin boards in temporary facilities opened for catastrophe operations. (Finding of Fact 113). Simply, Crawford's failure to prove compliance with §516.4 was the result of their own defective corporate policies.

### 1. Evidence Regarding §516.4 Compliance on the Exxon Valdez Project.

Prior to trial, the Court ruled that Crawford did not post FLSA notices in any of the areas where Kermith Sonnier worked[3]. (Opinion and Order of Court dated May 9, 2005, at 7-8). The places where Sonnier worked included an office on the first floor of a building in Valdez, the EB-2, and the Anchorage office in the Calais Building. (Finding of Fact 112). At the end of trial, Crawford stipulated that it did not post FLSA notices anywhere in Alaska on the Exxon Valdez project. (Finding of Fact 114).

This admission simply confirmed the evidence presented. Four Crawford supervisors on the Exxon Valdez project testified at trial. Tribble and Knight were called as Crawford witnesses

---

requirement of 29 C.F.R 541.118.

[3] Sonnier was the plaintiff in Sonnier v. Crawford & Company, CA:94-1755 (W.D.Pa. 1997, aff'd No. 97-3096 1997

and Sonnier and King were called by Plaintiffs. None of these supervisors could testify to the placement of these notices in the Crawford offices, despite the fact that they would be the Crawford officials charged with §516.4 compliance. In fact, the testimony of Tribble, Sonnier and King proved that Crawford didn't comply with §516.4 on the project and proved the FLSA notices was not in Crawford's Valdez office (Finding of Fact 118).

King produced photographs showing there was no FLSA notice in Crawford's Valdez office, and specifically not on the bulletin board (see especially Plaintiffs' Exhibits 68 and 69). King also testified that he was Crawford's supervisor at their Kenai office, and he did not put an FLSA notice up in that office, nor was one was sent to him by either Exxon or Crawford. (Finding of Fact 18). Crawford's supervisors' testimony that there were no FLSA notices in these offices was confirmed by the testimony of Crawford's and Exxon's employees (Finding of Fact 120).

Admitting that it did not post FLSA notices in Alaska, Crawford attempts to meet its burden of demonstrating that it posted FLSA notices on the Exxon Valdez project by showing that they delegated this duty to Exxon to post the notices in Crawford's offices. This argument fails for four reasons. First, the compelling evidence presented at trial showed the FLSA notices simply were not there (see above).

Second, there is no legal authority that an employer's duty to post can be delegated to another employer 29 C.F.R. §516.4,    Sonnier v. Crawford & Co., CA No. 94-1755 (W.D. Pa. 1997), aff'd., No. 97-3096, 1997 U.S. App. LEXIS 33444 (3d Cir. 1997), cert. denied, 523 U.S. 1107 (1998); Memorandum Order in Moss v. Crawford & Co., C.A. No. 98-1350 (W.D. Pa.), dated June 13, 2003, Conclusion of Law 1. At trial, Crawford cited several cases which further

---

U.S.App. LEXIS 33444 (3d Cir. 1997), cert. denied , 523 U.S. 1107 (1998).

support the fact that Crawford was responsible for posting the FLSA notices at its temporary offices. See, e.g., Walker v. Washbasket Wash & Dry, 2001 U.S. Dist. LEXIS 9309 (E. D. Pa. 2001) ("Employers covered by the FLSA's minimum wage provisions are required to post a notice explaining the Act in conspicuous places within the place of business. See 29 C.F.R. § 516.4").    In the other cases cited by Crawford, the statute of limitations was not tolled because the employer met its burden of showing that the employer placed the requisite poster in an area "where employees would be likely to see [it]" on their way to work  Byers v. Follmer Trucking Co., 763 F.2d 599, 601 (3d Cir. 1985). Crawford was unable to cite a single statute, regulation or case to support its contentions that an employer may delegate its duty to post under §516.4 to another employer.

Third, Crawford produced a DOL Wage and Hour Op. Ltr. (March 3, 2003).  As set forth in the DOL's initial response, the purpose for the issuance of DOL advisory letters is to offer advice to employers seeking to act in good faith in their employment procedures. This letter does not excuse Crawford's failure to post the notices required by the regulation, which requires that Crawford show that they acted in good faith, in conformity with and in reliance upon that letter. The conduct in question here occurred from 1989 through 1992, over 10 years prior to DOL Wage and Hour Op. Ltr. (March 3, 2003), and Crawford could not have relied in good faith upon a letter issued after the conduct in question; the reliance is not retroactive.  29 C.F.R. § 790.1; Donovan v. Baskin & Robbins, 527 F.Supp 93 (D.C. N.M. 1983); Olson v. Superior Pontiac, 765 F. 2d 1570 (11th Cir. 1985).  Also, the "good faith" defense in a wage and hour case requires that the opinion letter be signed by the administrator of the Wage and Hour Division of the DOL, but DOL Wage and Hour Op. Ltr. (March 3, 2003) is signed by a team leader with no authority under

§ 259(b). <u>Spires v. Ben Hill County</u>, 980 F. 2d 683 (11th Cir. 1993). Simply, a letter signed by a DOL team leader has no legal significance. Most important, Crawford cannot rely upon DOL Wage and Hour Op. Ltr. (March 3, 2003), because it is inconsistent with the plain language of the regulation, 29 U.S.C. § 516.4, which unambiguously requires that <u>every employer</u> post the FLSA notice, and opinion letters of the Department of Labor, unlike regulations, are not entitled to deference. <u>Christensen v. Harris County</u>, 529 U.S. 576, 586-588 (U.S. 2000). Essentially, the record reveals that Crawford misused a procedure to advise employers seeking to comply with the FLSA in their employment practice to attempt to manufacture law. Because the opinion was expressed by a team leader, and not the commissioner, and because this opinion is in contradiction to the unambiguous language of 29 C.F.R. δ516.4 this letter is of no legal significance.

Fourth, DOL Wage and Hour Op. Ltr. (March 3, 2003) does not permit Crawford to meet its burden of demonstrating that another employer posted the notices. The opinion letter assumes a set of facts vastly different than the evidence at trial. For example, the opinion letter assumes that the employees of one employer were working in another employer's office, where the notice was posted. The evidence at trial was that these were not Exxon's offices, but rather were temporary office locations set up solely for the purposes of conducting Crawford's operations, and that these offices were occupied almost entirely by Crawford employees and their subordinates, and that Crawford's employees had very little contact with Exxon employees and generally were not permitted access to Exxon offices.

Specifically, in Valdez, Crawford employees were not interspersed throughout the building, but were confined to one large room on the first floor of the building. This office was

populated solely by Crawford employees with the exception of one Exxon employee, and some

Arthur Andersen employees supervised by Floyd King (Finding of Fact 115).    Moreover,

Crawford employees in the Valdez office were not permitted to go into the Exxon office on the

second floor unless specifically invited or unless they had particular business and they did not eat

in the Exxon offices on the second floor of the building in Valdez. (Finding of Fact 117).  There

is overwhelming evidence that FLSA notices were not posted in the first floor office in Valdez,

where Crawford employees worked.  (Finding of Fact 118-120).

The only evidence that Exxon posted FLSA notices in the Crawford office in Valdez was

vague testimony by Otto Harrison (Finding of Fact 125).  Harrison's testimony is contradicted by

Plaintiffs' Exhibits 68 and 69, which are photographs showing the bulletin board in Crawford's

Valdez office at two separate times and which conclusively show that there was no FLSA notice

on the bulletin board.  (Compare Harrison testimony, Tr. 5/17/05 at 260-61 to Plaintiffs' Exhibits

68, 69, see also Plaintiffs' Exhibits 70-81, which depict other views of the Valdez office at

various times, but no FLSA notices).  Moreover, Harrison's testimony that Crawford employees

frequented and ate their meals with him on the second floor is contradicted by Crawford's two

project managers, who also testified as Crawford witnesses.  (Findings of Fact 116-117).  He

testified that he worked with some of the Crawford employees on a daily basis, but he was unable

to name any of them, except John Knight.  Especially noteworthy was the fact that he could not

remember either of Crawford's project managers, Tribble and Little, despite the fact that he

claims to have eaten all meals with them on a daily basis. (Finding of Fact 123). Harrison is not a

disinterested witness.  He was the general manager for Exxon on the project and retired as the

president of Exxon Pipeline. (Finding of Fact 122).  It is certainly in his best interest to testify

that Exxon complied with all federal regulations in the clean-up operation of the largest man-made ecological disaster in history, created solely by his employer, especially given the fact that the litigation involving this disaster is ongoing. (see e.g. Finding of Fact 124).

The evidence concerning the Anchorage office in the Calais Building is similar to that in Valdez. Carpenter and Harrison's offices were located on the Fourth Floor of the Calais Building, and there was an FLSA posting on that floor because it was a permanent Exxon office that was already occupied by Exxon when they moved in. Carpenter didn't know if there was an FLSA posting on the Third floor where Crawford was located. (Finding of Fact 132). Harrison couldn't remember if his office was on the Third floor or Fourth Floor, but he knew there was an FLSA poster on the floor where he was located (Finding of Fact 133). Crawford was located on the Third Floor in a space which had been an empty space in the building and the space was specifically set up for Crawford's operations (Finding of Fact 132).

Crawford maintained its own office in a defined area of a multi-story building, located to the left of the elevator, with separate entrances from the Exxon section. A guard on the Exxon side of the floor "wouldn't let you in," and Crawford employees were strictly forbidden from even opening the door to the Exxon office. (Finding of Fact 126). All of the people who worked in the Crawford side of the floor were employed by Crawford except for two Exxon people, Dick Green and Doug Dow, who would alternate, and again the Arthur Andersen employees supervised by Crawford (Finding of Fact 115). Exxon employees did not use the Crawford office. (Finding of Fact 129). On the Exxon side of the building there was a room set up on that side of the building to provide food and coffee for the Exxon employees, and Exxon employees never came over to the Crawford office to get coffee. (Finding of Fact 58)

15

The testimony of Knight is important in this instance.  He was the Crawford supervisor who took the initiative to place an FLSA notice in the Crawford office in the Jacobs Building on the Ashland Oil project, despite the fact that the office was selected by Phil Harmon and occupied by non-Crawford employees (Finding of Fact 135) there were non-Crawford employees in that office, e.g. Harmon.  However, in the identical circumstance in Crawford's offices in Valdez and Anchorage, he did not place an FLSA notice, did not audit the notice for compliance, nor was he able to testify that he even saw an FLSA notice in those offices. This evidence certainly does not meet Crawford's burden under Sonnier, Walker or Byers.

## 2.  Evidence Regarding § 516.4  Compliance on Buckeye Project.

The evidence is uncontradicted that Crawford failed to post FLSA notices on the Buckeye Project.  As with Exxon Valdez, there is no evidence that Crawford posted a notice on this project. Further, King took a number of photographs of the one room office for the Buckeye Project Crawford set up in Natrona Heights.  (Findings of Fact 138-141).  These photographs show the entire office during various time periods and conclusively show that there was no FLSA poster in that office.  (Finding of Fact 140).  Thus, Crawford failed to meet its burden of showing that it posted an FLSA notice in the Buckeye project office.

## 3.  Evidence Regarding § 516.4 Compliance On The Ashland Project

During the Ashland Oil project, Crawford did not have an exacting audit procedure in which precise records set forth that the FLSA notice was posted in each office where Crawford employees worked.  (Finding of Fact 134).  While there is evidence that John Knight posted an FLSA notice in the Ashland Oil project office in the Jacobs Building prior to November 17, 1988, there was no evidence that the notice was replaced when a new notice was published in

1990 when the minimum wage increased and after Knight had left the project and Kip Radigan took over supervision of the Ashland Oil project. (Finding of Fact 135). The evidence is uncontradicted that no FLSA notice was posted in the Whitehall office. (Findings of Fact 136-137).

**B.    Defendant Failed To Meet Its Burden Of Showing That Plaintiff's Had Actual Knowledge Of Their Legal Right To Overtime More Than Two Years Before The Filing Of The Complaint.**

Where no notice was posted, the defendant bears the burden of proving that the Plaintiff was aware of his rights. Nogar v. Henry F. Teichmann, Inc., 640 F. Supp. 365, 370 (D. Pa., 1985) (citing McClinton v. Alabama By-Products Corp., 743 F.2d 1483 (11th Cir. 1984)). A plaintiff's contact with an attorney does not commence the running of the statute of limitations until the plaintiff is actually informed of his individual rights under the statute. Nogar v. Henry F. Teichmann, Inc., 640 F. Supp. 365, 370-71 (W.D. Pa. 1985). General knowledge of overtime laws or "suspicions" that the employer violated overtime laws does not commence the running of the statute of limitations until the plaintiff has proper cognizance, that is, until the plaintiff consults an attorney regarding this matter and was specifically advised of his individual legal rights in this area or received information of a character tantamount to the type of knowledge in which an attorney would impart to his client regarding that individual's specific right to overtime. Callowhill v. Allen-Sherman-Hoff Company, Inc., 832 F.2d 269, 270-71 (3rd Cir. 1987); Sonnier v. Crawford & Company, CA: 94-1755 (W.D.Pa. 1997); Opinion and Order of Court dated May 2, 2005, at 13.

**1.    Floyd King.**    There was no evidence presented that King learned of his right to overtime wages for work performed on the Buckeye Oil project at any time over two years before

17

he filed this lawsuit. (Findings of Fact 18, 26, 27 and 28). He is entitled to recover unpaid overtime wages on the Buckeye project for worked performed between 04/01/1990-12/21/1991, in the amount of $14,367.39. (Finding of Fact 29).

    **2. Billy Myers.** There was no evidence presented that Myers learned of his right to overtime wages for work performed on the Exxon Valdez or Buckeye Oil projects at any time over two years before he filed this lawsuit. (Findings of Fact 45 and 46). He is entitled to recover unpaid overtime wages on the following project for the following time periods as a result of Crawford's failure to pay time and one-half for overtime:  Exxon Valdez, 04/09/1989-03/10/1990, $22,520.93; Buckeye Oil, 04/08/1990-01/18/1992, $11,197.50. (Finding of Fact 47).

    **3. James Coco.** There was no evidence presented that Coco learned of his right to overtime wages for work performed on the Exxon Valdez project at any time over two years before he filed this lawsuit. (Findings of Fact 48 and 49). His estate is entitled to recover unpaid overtime wages for his work on the Exxon Valdez project 04/09/1989-08/19/1989 in the amount of $13,680.83. (Finding of Fact 50).

    **4. Edward A. Hann.** There was no evidence presented that EA Hann learned of his right to overtime wages for work performed on the Exxon Valdez project at any time over two years before he filed this lawsuit. (Findings of Fact 59, 60, 61, 62, and 63). EA Hann is entitled to recover unpaid overtime wages on the Exxon Valdez project for worked performed between 08/06/1989-09/29/1989 in the amount of $27,794.70. (Finding of Fact 64).

    **5. Wells Hann.** There was no evidence presented that W Hann learned of his right to overtime wages for work performed on the Ashland Oil project at any time over two years before he filed this lawsuit. (Findings of Fact 73, 74, 75 and 76). W Hann is entitled to recover unpaid

overtime wages on the Ashland Oil from 09/03/1989-03/23/1991 in the amount of $4,550.27. (Finding of Fact 77).

     **6. Douglas Radigan.** There was no evidence presented that Radigan learned of his right to overtime wages for work performed on the Exxon Valdez or Buckeye Oil project at any time over two years before he filed this lawsuit. (Findings of Fact 103 and 104). In fact, Radigan worked has worked as an adjuster since 1989, but he was never paid overtime wages working as an adjuster or a monitor and he never heard of adjusters being paid overtime for hours worked over 40. (Radigan testimony, Tr.5/17/05 at 37). He first suspected that there may be a right to overtime for adjusters in 1999 or 2000, less than two years before the commencement of this action. (Radigan testimony, Tr.5/17/05 at 37). Radigan is entitled to recover unpaid overtime wages in the following amounts on the following project for the following time periods as a result of Crawford's failure to pay time and one-half for overtime: Exxon Valdez, 05/07/1989-09/23/1989, $11,879.63; Buckeye Oil, 09/24/1989-12/21/1991, $6,516.25 (Finding of Fact 105).

Dated: July 18, 2005            Respectfully Submitted,

Tybe A. Brett                    Joseph E. Fieschko, Jr.         John R. Linkosky
P.A. ID # 30064                 P.A. ID # 28797           P.A. ID # 66011
4710 US Steel Plaza             2230 Koppers Building      715 Washington Ave.
Pittsburgh, PA 15219           Pittsburgh, PA  15219      Carnegie, PA 15106
(412) 288-4387                 (412) 281-2204           (412) 278-1280

19

# EXHIBIT "1"

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3096

KERMITH SONNIER

v.

CRAWFORD & COMPANY, a Corporation,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 94-01755)
District Judge: Honorable William E. Weber

Submitted under Third Circuit LAR 34.1(a)
October 24, 1997

BEFORE: MANSMANN, GREENBERG, and ALARCON*, Circuit Judges

(Filed: OCT 2 9 1997

MEMORANDUM OPINION OF THE COURT

GREENBERG, Circuit Judge.

Crawford & Company appeals from the judgment entered in
this matter on January 28, 1997. In this action appellee Kermith
Sonnier obtained a judgment against Crawford, his former
employer, for overtime pay under the Fair Labor Standards Act, 29
U.S.C. § 201 et seq. In addition, Sonnier unsuccessfully sought
a judgment for vacation pay but as he does not cross-appeal this

_____

*Honorable Arthur L. Alarcon, Senior Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

EXHIBIT "1"

issue we are not concerned with it.  Judge Lee entered the judgment in accordance with his Memorandum Opinion following a bench trial.  Inasmuch as we find no errors of law in his opinion and his findings of fact are not clearly erroneous we will affirm.

We do comment, however, on one point.  In its brief Crawford observes that, "[n]either Sonnier nor his two witnesses testified that the minimum wage notice was not posted.  Rather, they testified that they did not see the notices."  Br. at 16.  In this regard we point out that Sonnier was proving a negative.  In the nature of things, a witness often could not testify that something did not happen.  At most the witness could say that he or she did not see it happen.  That would be particularly true as to relatively minor events such as posting of notices.  On the other hand, a witness might be able to testify more positively that a major event simply did not happen.  For example, a witness could testify that a building in which he was employed did not burn down.

We recognize that an employer may be in a difficult position with respect to establishing that it posted a notice.  After all, unobservant employees with no particular reason to ascertain whether a notice is posted might not see a notice that is there.  Yet an employer by an exacting audit process in which precise records set forth that a notice is posted should be able to establish so conclusively that a notice has been posted that evidence of employees that they did not see the notice would not

2

be sufficient to establish that it was not there.  In this case Crawford did not produce such definitive evidence.

In view of the aforesaid, we will affirm the order of January 28, 1997.

———————————

TO THE CLERK:

Please file the foregoing memorandum opinion.

——————————————————
Circuit Judge

DATED:

3

# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KERMITH SONNIER,                    )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )
                                    )  Civil Action No. 94-1755
CRAWFORD & COMPANY, a               )
corporation,                        )
                                    )
            Defendant.              )
                                    )

## MEMORANDUM OPINION

January 28, 1997

The plaintiff, Kermith Sonnier ("Sonnier"), brought this action against his former employer, Crawford & Company, a corporation ("Crawford"), to recover (i) vacation pay for the period from 1984 to September 1993 when Sonnier's employment terminated, and (ii) overtime pay pursuant to the Fair Labor Standards Act (29 U.S.C. § 216(b)) ("FLSA") for work in excess of 40 hours per week performed for the period from 1988 through June 1991.

While admitting that it did not make vacation payments to Sonnier and did not pay him any premium for hours in excess of 40 hours a week, Crawford claims that Sonnier was a CAT Core adjustor for the period from June 1983 until September 21, 1993, and that under its written policy and practice, CAT Core adjustors were not paid vacation time. Moreover, Crawford claims, in that capacity Sonnier's work was exempt from the overtime provisions of the FLSA in that Sonnier's work was subject to either the "executive" and/or the "administrative" exemptions.

1

AO 72A
Rev. 8/82)

MOSS
173

Crawford claims, in any event, that Sonnier's claim for overtime pay under the FLSA is barred by 29 U.S.C. § 255 because it was not commenced within two years after the cause of action accrued. Sonnier responds that the "Notice to Employers - Federal Minimum Wage Poster[s]" required by FLSA regulations was not properly posted and therefore, the two-year statute of limitations is tolled.

The Court held a bench trial on September 23 and 24, 1996, and makes the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.    Sonnier was hired by Crawford in September of 1979 pursuant to an oral contract of employment.

2.    Sonnier was employed from September 1979 through June 1983 as an independent adjustor.

3.    Sonnier was employed from June 1983 until September 21, 1993, as a CAT Core adjustor.

4.    Sonnier received an annual statement from Crawford (Exhibit 3) which described him as "new hire - full time" as of June 15, 1983.

5.    As a CAT Core adjustor, in addition to commissions received while working on assignments, Sonnier received a $200-per-month payment between his assignments, which Crawford characterizes as an advance against future commissions. In addition, Sonnier was entitled to retirement benefits, health insurance benefits and entitled to participate in Crawford's employment stock purchase plan.

2

AO 72A
(Rev. 8/82)

MOSS
174

6.   Sonnier's $200-per-month payment, between assignments, was subject to withholding and he received a W-2 form from Crawford including the amount of those payments.

7.   Sonnier was hired by Crawford as an independent property adjustor even though he had no formal training.  However, he had prior experience in the construction field.

8.   During both the Ashland Oil spill and the Exxon oil spill projects to which he was assigned, Sonnier was paid on a commission basis equal to 50% of Crawford's billings to its clients for the work performed by him.

9.   From January 10, 1988, through March 1989 and October 1989 through 1991, Sonnier was assigned to the Ashland Oil spill and was required to submit reports to his superiors concerning his observations of the equipment and employees used by contractors as the worksite.

10.   From March 1989 through October 1989, Sonnier was assigned to the Exxon-Valdez oil spill and was required to submit reports to his superior concerning the work of other monitors.  While Crawford considered him as the clean-up monitoring department of Crawford in Alaska, Sonnier only had the job title of "monitor" and had no right to hire, fire or discipline any employee on either of the projects and never had any settlement authority.

11.   All adjustors, including CAT Core adjustors, are required to have a state adjusting license, and Sonnier had a license only for the state of Texas .

AO 72A
(Rev. 8/82)

MOSS
175

12.     John Knight, III, an employee of Crawford since 1976, was the assistant manager of the Ashland Oil spill project of Crawford, and Sonnier worked as a monitor under him.

13.     Sonnier never saw a notice at any office of Crawford informing him of his right to overtime pay under the Fair Labor Standards Act.

14.     During his prior work experiences before his employment with Crawford, Sonnier frequently worked for amounts which appear to be less than the minimum wage beginning with his first employment when his father paid him $25 per week, and then later $1.10 per hour with no time and one-half for overtime.

15.     When he was operating as a subcontractor, Sonnier did not pay his employees overtime, but told them they would receive wages for the time allotted to complete a job even though it took less days.

16.     Later when he was employed on the Housing and Urban Development position as a subcontractor, he was paid by the foot, and during his entire career was only paid time and one-half for overtime on one job.

17.     Lloyd Hebert has been employed by Crawford as an independent adjustor and worked with Sonnier on the Exxon-Valdez spill project and did not see any FLSA notices posted in any of the offices where he worked.

18.     Dale Mills, presently employed as a Core adjustor with Sonnier, worked with Sonnier on the Ashland Oil spill project and did not recall seeing any FLSA notices posted at the Crawford/Ashland Oil spill project office in the Jacobs Building, Borough of Green Tree, Allegheny County, Pennsylvania.

4

C 72A
ev. 8/82)

MOSS
176

19.    Dale Mills personally set up the disaster office for Crawford in Steubenville, Ohio, for the Ashland Oil spill project and did not place the required FLSA notice in that office.

20.    Dale Mills never saw any FLSA notice in the central office location of Crawford in Atlanta, Georgia, or in its cafeteria.

21.    John Knight established the Ashland Oil spill project office for Crawford in the Jacobs Building and "copied all of the official posters from the branch office and posted them in the disaster office," but does not recall whether an FLSA notice was included.

22.    Although Knight worked on the Exxon-Valdez project, he did not testify about any notice being posted in any of the Alaska offices.

23.    Gerald M. Cox, Senior Vice President of Human Resources for Crawford and stationed in Atlanta, Georgia, personally saw an FLSA notice in the home office.

24.    During the relevant time period, Crawford had a company policy that the FLSA notice must appear on all bulletin boards and a periodic permanent branch audit to verify compliance with state and federal posting requirements is conducted on an average of every four to five years by Crawford.  Cox had no knowledge if either Knight or Mills were aware of the policy.

25.    Crawford did not produce any reports prepared in connection FLSA compliance audits.

5

MOSS
177

26.   The FLSA minimum wage notice was not posted in Crawford's branch offices where Sonnier worked as a CAT Core adjustor during the period from 1980 to September 1993.

27.   Sonnier became aware of his right to overtime pay during Hurricane Andrew at the end of 1992 when a fellow employee discussed his having gone to the "Labor Board," who said that Core adjustors were entitled to overtime pay.

28.   CAT Core adjustors, including Sonnier, were generally aware that it was Crawford's policy not to give them paid vacation or additional pay in lieu of vacation in excess of the monthly draw of $200.

29.   As a CAT Core adjustor, Sonnier always had at least three weeks per year when he did not work and during which he received a payment of $200 a month.

30.   Sonnier claimed and received unemployment benefits on at least four occasions between assignments while a CAT Core adjustor.

31.   Sonnier was not paid his commissions on Crawford's regular payroll.

32.   In 1988 Crawford paid Sonnier a total of $71,307.98.

33.   In 1989 Crawford paid Sonnier a total of $130,222.00.

34.   In 1990 Crawford paid Sonnier a total of $87,882.53.

35.   From January 1, 1991, to June 29, 1991, Crawford paid Sonnier $87,726.03.

36.   In addition to not receiving vacation benefits, CAT Core adjustors did not receive sick leave benefits afforded Crawford's regular full-time employees.

6

MOSS
178

37.     Sonnier never requested paid vacation, payment in lieu of time off, carryover of unused vacation time, or interpretation of Crawford's vacation policy during his employment with Crawford.

38.     Crawford did not have, and Sonnier was not issued, an employee handbook during his employment with Crawford, which handbook set forth vacation benefits to which he was entitled.

39.     Crawford did not offer paid vacation or additional compensation in lieu of vacation to any CAT Core adjuster, including Sonnier.

40.     The last day of overtime claimed by Sonnier is June 29, 1991.

41.     By a preponderance of the evidence, and based upon a detailed accounting submitted by Sonnier, he was underpaid the following amounts for the following years as a result of Crawford's failure to pay time and one-half for overtime:

| | |
|---|---|
| 1988 | $12,435.66 |
| 1989 | 21,842.55 |
| 1990 | 10,511.01 |
| 1991 | 4,851.31 |
| TOTAL: | $49,640.53 |

## Conclusions of Law

1.     Sonnier's overtime pay pursuant to the FLSA is not barred by the applicable statute of limitations because it was tolled due to the failure of Crawford to properly display the notices advising employees, including Sonnier, of their minimum wage and overtime pay rights pursuant to 29 C.F.R. § 516.4.

7

MOSS
179

2.    Crawford's failure to post the required notices tolled the running of any period of limitations. Bonham v. Dresser Industries, Inc, 569 F.2d 187, 193 (3d Cir. 1977); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984).    –

3.    The DOL interpretative regulations constitute a body of experience and informed judgment as to which courts may properly resort for guidance.

4.    Congress has explicitly granted the Secretary of Labor the duty to administer the act.  "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules that fill any gap left, implicitly or explicitly, by Congress." Condo v. Sysco Corp., 1 F.3d 599 at 604, 605 (7th Cir. 1993).

5.    29 C.F.R. § 516.4 requires every employer which has employees subject to FLSA's minimum wage provisions to post and keep posted notices explaining the act and to have the notice posted in a conspicuous place in every establishment with such employees are employed so as to permit them to observe and copy it.  The precise language of the regulation is as follows:

§ 516.4, Posting of Notices, provides every employer employing any employee subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.  Any employer of employees to whom § 7 of the Act does not apply because of an exemption of broad application to establishment may alter or modify the poster with a legible notation to show that the overtime provisions do not apply.  For example: Overtime provisions not applicable to taxicab drivers.  (§ 13(b) and (17)).

6.    Crawford did not produce any written records of the audits required to monitor the posting of FLSA notices in its various offices.

8

MOSS
180

AO 72A
(Rev. 8/82)

7.      Crawford failed to meet its burden to establish that Sonnier meets all the applicable tests for an exempt employee. Sutton v. Engineered Systems, Inc., 598 F.2d 1134 (8th Cir. 1979).

8.      Fair Labor Standards Act exemptions "are to be narrowly construed . . . and their applications limited to those establishments plainly and unmistakenly within their terms and spirits." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453 (1960). An employer has the burden of proving an exemption under the FLSA. Sutton v. Engineered Systems, Inc., 598 F.2d 1134 (8th Cir. 1979).

9.      The exemption from Fair Labor Standards Act minimum wage and overtime compensation applies to those employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

10.     Exemptions from FLSA overtime pay requirements are to be narrowly construed against employer seeking to assert them and their application limited to those establishments plainly and unmistakenly within their terms and spirit. Martin v. Cooper Elec. Supply Co., 940 F.2d 896 (3d Cir. 1991).

11.     Burden of proving application of administrative employee exemption from Fair Labor Standards Act's overtime pay requirements is upon employer, and if record is unclear as to some exemption requirement, employer will be held not to have satisfied its burden. Fair Labor Standards Act of 1938, § 13(a)(1), 29 U.S.C. § 213(a)(1). Id.

12.     Crawford did not meet its burden to the "short" test for "executive" and administrative exemptions pursuant to the Fair Labor Standards Act. The short test

9

MOSS

181

applied to employees compensated at a rate of not less than $250.00 per week. Sonnier was compensated at a rate in excess of $250.00 per week.

13.    Sonnier did not have authority to hire or fire other employees and did not perform work requiring special training. Moreover, Sonnier's job responsibilities did not require him to exercise discretion and independent judgment.

14.    In classifying plaintiff Sonnier as exempt under the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207, Crawford did not act in good faith and had no reasonable grounds for believing that in doing so it was not in violation of the act by virtue of the exemption provided by 29 U.S.C. § 213(a)(1).

15.    The FLSA defines the regular rate of pay as "all remuneration from employment paid to or on behalf of the employee." 29 U.S.C. § 207(e).

16.    The regular rate is the hourly rate actually paid to the employee for the normal non-overtime work week for which the employee is employed. Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S. Ct. 1242 (1945).

17.    Generally the hourly rate of pay is determined by dividing the employee's total work week remuneration by the number of hours worked during that work week. 29 C.F.R. § 778.202.

18.    The Fair Labor Standards Act requires overtime compensation at the rate of one and one-half times the "regular rate" for hours worked in excess of 40 hours during the work week. 29 U.S.C. § 207(a)(1).

19.    The district court may impose liquidated damages to compensate an employee for delay in receiving wages that were improperly denied because of a violation

10

MOSS
182

of FLSA. <u>Reich v. Chez Robert, Inc.</u>, 821 F. Supp. 967 (D.N.J. 1993), <u>vacated</u>, 28 F.3d 401 (ed Cir. 1994) because the court improperly reduced compensatory damages.

20.    The imposition of liquidated damages is not punitive. <u>Marshall v. Brunner</u>, 668 F.2d 748, 753 (3d Cir. 1982).

21.    Employers must show good faith and reasonable grounds before court may exercise discretion to deny or limit liquidated damages for violation of Fair Labor Standards Act's overtime wage provisions. <u>Id.</u>

22.    There is no evidence in the record that Crawford acted in good faith and with reasonable grounds.

23.    Sonnier failed to establish any basis for his recovery of vacation pay.

24.    Crawford has no handbook and none was issued to Sonnier that constituted a contract of employment.

25.    There was no contract between Sonnier and Crawford entitling plaintiff to receive any paid vacation or payment in lieu of vacation applicable during the period Sonnier was employed by Crawford.

26.    Sonnier is entitled to overtime payment in the amount of $49,640.63 together with liquidated damages.

27.    Sonnier is entitled to liquidated damages in an amount equivalent to all back overtime wages. 29 U.S.C. § 216(b).

28.    Sonnier is entitled to reasonable attorneys' fees and costs of the action.

29.    Sonnier is not entitled to vacation pay pursuant to his oral employment contract with Crawford.

11

MOSS

182

An appropriate order will be entered in favor of Sonnier and against Crawford for overtime compensation in the amount of $49,640.53, liquidated damages in the same amount, and an award for reasonable attorneys' fees and costs of the action, which fees and costs shall be identified in a motion to be filed by Sonnier to which Crawford may respond.

Lee, J.

12

AO 72A
(Rev. 8/82)

MOSS
1211

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KERMITH SONNIER,               )
                               )
          Plaintiff,           )
                               )
     vs.                       )  Civil Action No. 94-1755
                               )
CRAWFORD & COMPANY, a          )
corporation,                   )
                               )
          Defendant.           )

ORDER OF COURT

AND NOW, this 28th day of January, 1997, it is hereby

ORDERED that judgment is entered in favor of defendant, Crawford & Company, a corporation, and against plaintiff, Kermith Sonnier, on Count I for vacation pay;

IT IS FURTHER ORDERED that judgment is entered in favor of Kermith Sonnier, plaintiff, and against Crawford & Company, a corporation, defendant, on Count II for overtime compensation in the amount of $99,281.06 as follows:

Overtime pay          . . . $49,640.53
Liquidated Damages    . . . . 49,640.53

TOTAL:                . . . $99,281.06

IT IS FURTHER ORDERED that the plaintiff, Kermith Sonnier, on or before February 11, 1997, may submit a motion for counsel fees and costs which are hereby

13

MOSS
185

AO 72A
(Rev. 8/82)

allowed in his favor; on or before February 25, 1997, the defendant, Crawford & Company, a corporation, may respond to the motion for counsel fees and costs.


_____
Donald J. Lee
United States District Judge


cc    Joseph E. Fieschko, Jr., Esquire
       2128 Koppers Building
       Pittsburgh, PA 15219

       Richard L. Rosenzweig, Esquire
       Rosenzweig and Rosenzweig
       501 Grant Street
       475 Union Trust Building
       Pittsburgh, PA 15219

       Judd F. Osten, Esquire
       Crawford & Company
       5620 Glenridge Drive, N.E.
       Atlanta, GA 30342

14

AO 72A
(Rev. 8/82)

SSU.
186

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WELLS HANN, ELDA COCO,
PERSONAL REPRESENTATIVE
OF THE ESTATE OF JAMES COCO,
deceased, EDWARD HANN, BILLY
MYERS, FLOYD KING and DOUG
RADIGAN,

                Plaintiffs

    vs.

CRAWFORD & COMPANY, a corporation,

                Defendants

CIVIL DIVISION

NO.: 00-1908

Chief Judge Donetta Ambrose
Chief Magistrate Judge Francis X.
Caiazza

## CERTIFICATE OF SERVICE

    I, Regina Fieschko, secretary for Joseph E. Fieschko, Jr., do hereby certify that I

have served a true and correct copy of the Plaintiffs' Post Trial Brief first class mail,

postage prepaid, on the following:

Robert H. Buckler, Esquire
Troutman Sanders
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308-2216

Dated: July 18, 2005

                             Regina Fieschko
                             Fieschko and Associates
                             2230 Koppers Building
                             Pittsburgh, PA  15219