IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELLS HANN, ELDA COCO, Personal Representative of the Estate of James Coco, deceased, EDWARD HANN, BILLY MYERS FLOYD KING and DOUG RADIGAN,<br><br>　　　　Plaintiffs,<br><br>　-vs-<br><br>CRAWFORD & COMPANY, a corporation,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No.  00-1908<br>)<br>)<br>)<br>)<br>) |

AMBROSE, Chief District Judge.

# **FINDINGS OF FACT**
# **CONCLUSIONS OF LAW**
### and
# **ORDER OF COURT**

## INTRODUCTION

Plaintiffs, Wells Hann, Elda Coco, personal representative of the estate of James Coco, deceased, Edward Hann, Billy Myers, and Floyd King initially brought this cause of action against Defendant, Crawford & Company ("Crawford"), on September 21, 2000.[1] They filed their Third Amended Complaint along with Plaintiff, Doug Radigan, against Crawford on June 17, 2002.  (Docket No. 59).  Therein, Plaintiffs assert that Crawford violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

---

[1]On September 26, 2000, Plaintiffs filed an Amended Complaint adding Doug Radigan.  (Docket No. 2).

§207(a)(1), for failure to pay overtime wages for work in excess of forty hours per week as insurance monitors, insurance adjusters, and other work on four catastrophe projects (the Exxon Valdez Oil Spill, the Ashland Oil Spill, the Uni-Mart Convenient Store Underground Petroleum Leak, and the Buckeye Oil Spill) between 1989 and 1992.  A non-jury trial in this matter was held on May 16 and 17, 2005 and May 19-20, 2005.  Based on the same, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I. IDENTIFICATION OF THE PARTIES AND THEIR JOB DUTIES

#### A. CRAWFORD

1. Crawford is a provider of claims adjusting and cost control services for insurance companies and self-insured businesses.

2. Crawford provides its services for both man-made and natural catastrophes.

3. Each of the six Plaintiffs worked for Crawford and claims Crawford violated the FLSA for failure to pay overtime wages for work in excess of forty hours per week as insurance monitors, insurance adjusters, and other work on four catastrophe projects (the Exxon Valdez Oil Spill, the Ashland Oil Spill, the Uni-Mart Convenient Store Underground Petroleum Leak, and the Buckeye Oil Spill) between 1989 and 1992.

#### B. WELLS HANN

4. Wells Hann was employed by Crawford from September 1989 through March 1991, as a supervisor for the response to cost claims by thirteen different

governmental agencies on the Ashland Oil Spill project.

### C. JAMES COCO

5. James Coco was employed by Crawford from April 1988 through August 1989, as an auditor / invoice reviewer and as a monitor on the Exxon Valdez Oil Spill project ("Exxon Valdez project").

6. While on the Exxon Valdez project, Mr. Coco began working out of the Exxon Valdez Command Center ("the Command Center") in Valdez, Alaska.

7. When Mr. Coco became a monitor on the Exxon Valdez project he moved offices, but the location is unknown.

### D. EDWARD HANN

8. Edward Hann came to Crawford with 37 years of experience in handling business interruption claims. Edward Hann was also a part owner or sole owner of three companies where he complied with state and federal wage laws.

9. Edward Hann was employed by Crawford as a claims adjuster from August 1989 through September 1990, on the Exxon Valdez project.

10. While on the Exxon Valdez project, Edward Hann worked solely out of the Exxon Claims Office at the Calais Building in Anchorage, Alaska.

### E. BILLY MYERS

11. Billy Myers was employed by Crawford as an auditor / invoice reviewer and a claims adjuster from April 1989 through March 1990, on the Exxon Valdez project out of the Command Center (April 1989-August/September 1989) and the Calais building (August 1989 - March 1990).

12. Mr. Myers also worked as a claims adjuster from April 1990 through January 1992 on the Buckeye Pipeline Petroleum Spill project ("Buckeye project") in Natrona Heights, Pennsylvania.

13. Mr. Myers was a core catastrophe adjuster for Crawford from 1990 to 2000. Core catastrophe adjusters are first responders. In other words, they are one of the first employees on the site to assess the situation. Mr. Myers attended some of the annual core catastrophe adjuster meetings at Crawford's headquarters in Atlanta, Georgia.

14. Prior to working for Crawford, Mr. Myers was the President and 40% owner of Underwood Building Supplies ("Underwood"), a company worth 10 million dollars in sales when he left. While Mr. Myers worked for Underwood, he knew there was a wage law regarding overtime pay for employees that worked over 40 hours a week.

F. **FLOYD KING**

15. Floyd King was employed by Crawford as the project manager from April 1990 through December 1991, on the Buckeye project.

16. Mr. King also worked on the Exxon Valdez project as a supervisor over claims adjusters, and for Crawford on the Ashland Oil project but is not pursuing a claim for those projects in this lawsuit.

17. Because of his job duties, Mr. King had knowledge of the fact that when certain people work over 40 hours a week, they are entitled to overtime compensation.

18. From 1983-1994, Mr. King was a core catastrophe adjuster and attended some of the annual meetings at Crawford's headquarters.

G. **DOUG RADIGAN**

19. Doug Radigan was employed by Crawford as a monitor from May 1989 through September 1989, on the Exxon Valdez project at the Command Center for the first two to three weeks and then he worked on the Exxon Barge II ("EBII").

20. Mr. Radigan also worked for Crawford as an adjuster for business interruption claims and lost wage claims from September/October 1989 through March 1990, on the Uni-Mart Convenience Store Underground Petroleum Leak project ("Uni-Mart project") in Greentree, Pennsylvania in the Jacobs building.

21. Mr. Radigan also worked for Crawford as a monitor and invoice reviewer from April 1990 through December 1991, on the Buckeye project.

22. Prior thereto, and at least since the 1980's, Mr. Radigan has known that there is a law that requires an employer to pay overtime compensation for hours worked in excess of 40 hours per week.

H. **JOB DUTIES**

23. Crawford employees perform two general functions: claims control and cost control. Claims functions are performed by adjusters and their supervisors, and involve the handling of third-party claims, whereas cost control functions are performed by monitors, invoice reviewers, and their supervisors, and involve minimizing the costs of the project by monitoring the clean-up process and auditing invoices presented to the client by contractors.

24. Claims adjusters investigate, evaluate and negotiate both liability and damages with third parties, including lost wages and business interruption claims. Business interruption claims are those claims where, due to the catastrophe, businesses lose money because of a decline or interruption of sales, and require people to work overtime or use contractors.

25. Monitors are the eyes and ears of the client on the project and work with the contractors and their employees to make sure the clean-up costs are under control. In other words, they monitor what exactly is going on with the project and document it.

26. Invoice reviewers analyze all of the cost information and tell the accounting story of the spill. They are the client's right hand, feeding them documentation and information when there is a discrepancy between the invoices and the actual documentation. They are involved in the negotiation over the resolution of disputed bills.

## II. **RELEVANT LOCATIONS OF EMPLOYMENT WITH CRAWFORD**

27. Crawford's headquarters are in Atlanta, Georgia, which is where core catastrophe adjusters hold their annual meetings. Crawford conspicuously posted FLSA notices at its headquarters in Atlanta, Georgia.

28. If a catastrophe project could not be conducted from its headquarters, Crawford would set up at one of the following locations: 1) the client's facility; 2) a temporary catastrophe office rented by Crawford; or 3) a permanent Crawford office.

A. <u>**EXXON VALDEZ OIL SPILL**</u>

29. The Exxon Valdez Oil Spill occurred in March of 1989, in Valdez, Alaska.

30. Mr. Coco, Mr. Myers, Mr. Radigan, and Edward Hann all worked on the Exxon Valdez project. Mr. King worked on the Exxon Valdez project, but does not assert a claim for his work on the Exxon Valdez project in this lawsuit.

31. There were four locations at which said Plaintiffs worked on the Exxon Valdez project: 1) The Valdez Command Center in Valdez, Alaska; 2) The Calais Building in Anchorage, Alaska; 3) The Exxon Barge - II ("EB-II"); and 4) The Kenai Office in Kenai, Alaska.

32. Crawford stipulated at trial that it did not post any FLSA notices at any of the locations on the Exxon Valdez project in Alaska.

33. Each site was a multi-employer worksite operated and controlled by Exxon. Exxon controlled access to the locations and issued identification badges to all Crawford employees upon their arrival, which provided Crawford employees access to the entire worksite.

34. As testified to by former Exxon employees, Don Carpenter and Otto Harrison, Exxon conspicuously posted FLSA notices in each of the four locations.

B. <u>**ASHLAND OIL SPILL**</u>

35. The Ashland Oil Spill occurred on January 2, 1988, in Floreffe, Pennsylvania, which is a suburb of Pittsburgh, Pennsylvania, on the Monongahela River.

36. Crawford set up a temporary catastrophe office in the Jacobs building on Greentree Hill, in Pittsburgh, Pennsylvania, in January of 1988.

37. Both Wells Hann and Mr. King worked on the Ashland Oil Spill project. In addition, during the time that Mr. Radigan was working on the Uni-Mart project, he would routinely visit his brother, Kip, who was working on the Ashland Oil Spill project. Mr. Radigan would also go to the Jacobs building to talk with John Knight, assistant project manager for the Ashland Oil Spill project.

38. In mid-January, 1988, John Knight, copied the FLSA notice that was posted in Crawford's branch office in the NRC building (next to the Jacob's building) and had Linda Straka, office manager for the Ashland Oil Spill project, conspicuously post an FLSA notice on the bulletin board in the Jacobs building. An FLSA notice remained on that bulletin board until the project ended, with old posters being replaced with updated posters at the appropriate times.

C. **UNI-MART CONVENIENT STORE UNDERGROUND PETROLEUM LEAK**

39. The Uni-Mart leak occurred in Pittsburgh, Pennsylvania, around September 1989.

40. Crawford used space in its Pittsburgh branch office to operate its services for the Uni-Mart project. In 1982, the Pittsburgh Branch Office was located in the Jacobs complex in the NRC building, but later moved to Penn Center West, in Robinson Township.

41. The project was not a long project because a dispute arose between Crawford and Uni-Mart, and Crawford withdrew from the contract.

42. Mr. Radigan worked on the Uni-Mart project. During the time that Mr. Radigan worked on the Uni-Mart project, he worked out of the NRC building. He

would go over to the Jacobs building to give John Knight updates on the Uni-Mart project.

43. Mr. Charlie Histon, manager of the Pittsburgh branch office, conspicuously posted an FLSA notice in Crawford's Pittsburgh branch office in the NRC building and in Penn Center West.  An FLSA notice remained in those offices, with old posters being replaced with updated posters at the appropriate times.

D.  **BUCKEYE OIL SPILL**

44. The Buckeye oil` spill occurred in Pittsburgh, Pennsylvania, when oil from a pipeline spilled into the Allegheny River.

45. The services provided by Crawford on the Buckeye project began in April of 1990 and concluded in January of 1992.

46. Mr. King, Mr. Myers, and Mr. Radigan all have filed claims for work they performed on the Buckeye project.

47. Crawford employees working on the Buckeye project worked out of an office in Natrona Heights, but the employees would first check in at the Jacobs building, where an FLSA notice was conspicuously posted.

## CONCLUSIONS OF LAW

1. The statute of limitations for alleged past due overtime wages under the FLSA is two years, or three years for a willful violation.  29 U.S.C. §255(a).[2]  Since the

---

[2] 29 U.S.C. §255 provides, in pertinent part, as follows:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], ...--

last alleged violation occurred in January of 1992, and Plaintiffs' claims were not filed until 2000, there is no doubt that the statue of limitations has run, absent some sort of tolling.

2. The burden of proving that the statute of limitations has been tolled is upon Plaintiffs. *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

3. "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *citing, Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).

4. "[T]here are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver*, 38 F.3d at 1387. In this case, Plaintiffs assert that equitable tolling is appropriate because Crawford failed to post notices of the FLSA in violation of 29 C.F.R. §516.4.

5. Section 516.4 provides as follows:

---

(a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued....

29 U.S.C.A. § 255(a).

> § 516.4 Posting of notices. Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy. Any employer of employees to whom section 7 of the Act does not apply because of an exemption of broad application to an establishment may alter or modify the poster with a legible notation to show that the overtime provisions do not apply. For example: "Overtime Provisions Not Applicable to Taxicab Drivers (Sec. 13(b)(17))".

29 C.F.R. § 516.4.

6. The failure to post a required notice will toll the running of the limitations period, "at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights under" the Act. *Nagger v. Henry F. Eichmann, Inc.,* 640 F.Supp. 365, 370 (W.D.Pa. 1985), *citing, Bienheim v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir. 1977).

7. Applying the above law to the facts of the case, I find that Crawford has met its posting duties under §514.6 with regard to the Ashland project in the Jacobs building and with regard to the Uni-Mart project in the NRC building. Therefore, I conclude that Plaintiffs have failed to meet their burden of establishing that the statute of limitations was tolled as to those employees who worked on said projects: Wells Hann and Doug Radigan. Consequently, the statute of limitations as to Wells Hann and Doug Radigan has run and their claims for those projects are time-barred.

8. I further conclude that Plaintiffs have failed to meet their burden of establishing that the statute of limitations was tolled as to the Exxon Valdez project

as to James Coco, Edward Hann, Billy Myers and Doug Radigan. The Department of Labor ("DOL") issued an Opinion Letter dated March 3, 2003, interpreting posting requirements on multi-employer work sites and stated that where the employees of a company are working "in another employer's office," and the FLSA notice is already conspicuously posted in compliance with §516.4, no additional positing of the notice is required. Defendant's Ex. Z. I find this interpretation of §514.6 to be persuasive, consistent with the intent of the regulation to conspicuously post, and logical as it relates to multi-employer work sites. Otherwise, multi-employer work sites would be littered with redundant postings. Therefore, I conclude that Plaintiffs have failed to meet their burden of establishing that the statute of limitations was tolled as to those employees who worked on the Exxon Valdez project: James Coco, Edward Hann, Billy Myers and Doug Radigan. Consequently, the statute of limitations as to James Coco, Edward Hann, Billy Myers and Doug Radigan has run and their claims as to the Exxon Valdez project are time-barred.

9. While there is no definitive evidence that Crawford posted at the Natrona Heights location, I conclude that tolling of the statute of limitations is not warranted for those employees working on the Buckeye project: Billy Myers, Floyd King and Doug Radigan. First, all employees who worked on the Buckeye project were required to check in at the Jacobs building where the notice was conspicuously posted. Second, each of these employees worked on other projects for Crawford where the notices were posted. Third, each of these employees' job duties with Crawford at some point involved understanding the right to overtime

compensation for certain employees. Fourth, Mr. Myers and Mr. Radigan had outside, independent knowledge of the right to overtime for certain employees who worked over 40 hours a week. Thus, each employee had knowledge of his rights under the FLSA prior to 1997. Consequently, the statute of limitations as to Billy Myers, Floyd King and Doug Radigan has run and their claims as to the Buckeye project are time-barred.

*************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELLS HANN, ELDA COCO, Personal Representative of the Estate of James Coco, deceased, EDWARD HANN, BILLY MYERS, FLOYD KING and DOUG RADIGAN,<br><br>      Plaintiffs,<br><br> -vs-<br><br>CRAWFORD & COMPANY, a corporation,<br><br>      Defendant. | Civil Action No. 00-1908 |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **9th** day of August, 2005, after a bench trial and for the reasons set forth above, it is ordered that judgment is entered in favor of Defendant and against Plaintiffs as to all claims.

BY THE COURT:

_____

Donetta W. Ambrose,
Chief U. S. District Judge